UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUHAIL LAUREANO, individually
and as Administrator of the
Estate of Eliezer Lopez,

            Plaintiff,

-against-

CITY OF NEW YORK, LUIS LINARES,
LUIS ANGELES, JOHN DOES ##1-3,

            Defendants.

No. 17-CV-181 (LAP)

MEMORANDUM & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court are Defendants' ten motions in limine.
(See dkt. no. 79.)  To aid the Court's consideration of the
issues, the parties have briefed each motion individually.[1]  The
Court's rulings on each motion are set forth below.

## I.   **Legal Standards**

    "The purpose of a motion in limine is to allow a court to
rule on the admissibility of potential evidence in advance of
trial."  Gucci Am., Inc. v. Guess?, Inc., 858 F. Supp. 2d 250,
253 (S.D.N.Y. 2012).  "A court will exclude evidence on a motion
in limine only if it is clearly inadmissible on all potential
grounds."  Romanelli v. Long Island R.R. Co., 898 F. Supp. 2d

---

[1] (See dkt. nos. 81-90 (memoranda of law in support); dkt.
nos. 94-103 (memoranda of law in opposition); dkt. nos. 109-117
(reply memoranda of law in support).)  The parties filed a joint
supplemental letter regarding the motions in limine on March 3,
2021.  (See dkt. no. 121.)

626, 629 (S.D.N.Y. 2012) (quotation marks omitted).  The Federal Rules of Evidence govern the admissibility of evidence at trial. Painting in broad strokes, Defendants' motions deal with three types of evidentiary rules: (1) those applying to expert testimony, (2) those relating to relevance and unfair prejudice, and (3) those governing the admissibility of criminal convictions and other past bad acts.

### a. Expert Testimony

"Under Federal Rule of Evidence 702, lower courts perform a 'gatekeeping' function and are charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II), 982 F.3d 113, 122–23 (2d Cir. 2020) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)).  Rule 702 allows for the admission of testimony by a qualified expert if four conditions are met: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case."  FED. R. EVID. 702.

In addition to those factors, districts courts may also consider the other, "more specific factors" set forth in Daubert, "some or all of which might prove helpful in determining the reliability of a particular scientific theory or technique." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (quotation marks omitted). "These factors are: (1) whether the methodology or theory has been or can be tested; (2) whether the methodology or theory has been subjected to peer review and publication; (3) the methodology's error rate; and (4) whether the methodology or technique has gained general acceptance in the relevant scientific community." Clerveaux v. E. Ramapo Cent. Sch. Dist., 984 F.3d 213, 233 (2d Cir. 2021). "[T]he inquiry is a flexible one," however, "and the factors Daubert mentions do not constitute a definitive checklist or test." Restivo v. Hessemann, 846 F.3d 547, 576 (2d Cir. 2017) (cleaned up).

"The proponent of expert testimony must establish admissibility by a preponderance of the evidence," but that standard is not a particularly high one. Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd., 392 F. Supp. 3d 382, 397 (S.D.N.Y. 2019). Indeed, "in accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion." Faulkner v. Arista Records LLC, 46 F. Supp.

3d 365, 376 (S.D.N.Y. 2014) (Preska, J.).  At base, "[t]he

fundamental requirements are . . . that such evidence be

relevant and reliable," United States v. Jones, 965 F.3d 149,

161 (2d Cir. 2020), and district courts enjoy "significant

latitude" in making those determinations, Clerveaux, 984 F.3d at

236.

### b. Relevance and Unfair Prejudice

Evidence must be relevant to be admissible.  See FED. R.

EVID. 402.  "Evidence is relevant if: (a) it has any tendency to

make a fact more or less probable than it would be without the

evidence; and (b) the fact is of consequence in determining the

action."  FED. R. EVID. 401.  That hurdle is a "very low" one.

United States v. White, 692 F.3d 235, 246 (2d Cir. 2012).

Indeed, "[e]vidence need not be conclusive in order to be

relevant;" "[a]n incremental effect is sufficient."  United

States v. Certified Env't Servs., Inc., 753 F.3d 72, 90 (2d Cir.

2014) (ellipsis omitted).  However, relevant evidence may be

excluded "if its probative value is substantially outweighed by

a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting

time, or needlessly presenting cumulative evidence."  FED. R.

EVID. 403.  "[T]he Court has 'broad discretion to balance

probative value against possible prejudice' under Rule 403."

United States v. Elmowsky, 501 F. Supp. 3d 236, 239 (S.D.N.Y.

2020) (quoting United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008)).

### c. **Past Criminal Acts**

The Federal Rules of Evidence authorize the admission of evidence regarding past bad acts for certain, limited purposes. Relevant to this litigation are three such rules: Rule 404, Rule 608, and Rule 609.

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). That same evidence is admissible, however, if introduced for a different purpose, such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). If the evidence is "offered for a proper purpose under Rule 404(b)," it admissible if it is "relevant to a disputed issue" and its "probative value . . . is not substantially outweighed by the danger of unfair prejudice."[2]

---

[2] United States v. Frazier, No. S6 15-CR-153 (VSB), 2019 WL 761912, at *5 (S.D.N.Y. Feb. 21, 2019) (cleaned up); see also United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011) ("This Circuit follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402.").

Rule 608 provides another avenue through which to introduce certain evidence of prior bad acts. Under Rule 608, a "court may, on cross-examination," permit inquiry into "specific instances of a witness's conduct" if those instances "are probative of the character for truthfulness or untruthfulness of . . . the witness." FED. R. EVID. 608(b). "[E]xtrinsic evidence," however, "is not admissible" under that Rule, id., and the term "extrinsic evidence" "encompasses documentary evidence," United States v. Nelson, 365 F. Supp. 2d 381, 389 (S.D.N.Y. 2005). The common-law rule of "impeachment by contradiction" operates as a narrow exception to Rule 608, allowing for the introduction of extrinsic evidence to contradict facts a witness puts at issue on his direct. See United States v. Ramirez, 609 F.3d 495, 499 (2d Cir. 2010). However, even if those rules permit the admission of evidence, that evidence is still "subject to the probative-prejudice balancing test in Rule 403." Williams v. Geraci, No. 14-CV-5742 (SIL), 2020 WL 5848738, at *8 (E.D.N.Y. Sept. 30, 2020); accord Frazier, 2019 WL 761912, at *5.

Finally, Rule 609 allows for the introduction of criminal-conviction evidence "to attack[ ] a witness's character for truthfulness." FED. R. EVID. 609(a). Under that Rule, evidence of a felony conviction--that is, for a crime "punishable . . .

by imprisonment for more than one year"[3]--"must be admitted, subject to Rule 403, in a civil case."  FED. R. EVID. 609(a)(1)(A).  "When balancing the probative value of a conviction against its prejudicial effect, courts will examine four factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness."  Olutosin v. Gunsett, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *9 (S.D.N.Y. Oct. 31, 2019) (quotation marks omitted).  A ten-year safe-harbor period also applies, which runs from either "the witness's conviction or release from confinement for it, whichever is later."  FED. R. EVID. 609(b).

## II.  Discussion

### a. First Motion in Limine

Defendants' First Motion in Limine seeks to preclude the testimony of Dr. Elaine Chiu, whom Plaintiff has retained as an expert.  (See dkt. no 81 at 1.)  Defendants proffer three reasons why Dr. Chiu should be excluded: (1) she is not qualified to testify as an expert in this case, (see id. at 3-4); (2) her conclusions are not reliable, (see id. at 4-8); and

---

[3] FED R. EVID. 609(a)(1); see also N.Y. PEN. LAW § 10.00(5) ("'Felony' means an offense for which a sentence to a term of imprisonment in excess of one year may be imposed.").

(3) her conclusions are not relevant, (see id. at 8-10).  The
Court will take each in turn.

### 1. Qualifications

Defendants first assert that Dr. Chiu "is not qualified to
opine in this context"--"where an individual is rendered
quadriplegic a result of a fall after allegedly having been
pushed"--because she has never offered an opinion in a similar
factual scenario and has not taught or published on the subject.
(Id. at 3.)  Plaintiff counters that Defendants' position
essentially ignores Dr. Chiu's extensive qualifications in
biomechanics and medicine.  (See dkt. no. 94 at 2-4.)

When evaluating an expert's qualifications, courts do two
things:  (1) "examine the totality of the witness's background
to determine whether he or she exhibits . . . knowledge, skill,
experience, training, or education . . . with respect to a
relevant field," Washington v. Kellwood Co., 105 F. Supp. 3d
293, 304 (S.D.N.Y. 2015); and (2) "compare the area in which the
witness has superior knowledge, education, experience, or skill
with the subject matter of the proffered testimony," 523 IP LLC
v. CureMD.Com, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014).  Those
requirements are "liberally construed." EEOC v. Bloomberg L.P.,
No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at *5 (S.D.N.Y. Aug.
31, 2010) (Preska, J.).

Applying those standards, Dr. Chiu is qualified to present expert testimony in this case.  As Plaintiff points out and Defendants acknowledge, Dr. Chiu has extensive education, training, and experience in the fields of biomechanics and medicine.  (See dkt. no. 94 at 2-3; dkt. no. 81 at 3.)  And the testimony she seeks to offer plainly concerns and draws on that knowledge and experience.  Defendants' arguments that Dr. Chiu has not testified or published regarding this exact factual scenario do not negate her formal medical training, years of experience treating patients with injuries like Mr. Lopez's, or her education in bioengineering.  To the contrary, Defendants' complaints regarding Dr. Chiu's qualifications "go to the credibility and weight of [her] testimony, not its admissibility."  Thomas v. YRC Inc., No. 16 Civ. 6105 (AT) (HBP), 2018 WL 919998, at *6 (S.D.N.Y. Feb. 14, 2018) (quotation marks omitted).

### 2. **Reliability**

Next, Defendants aver that Dr. Chiu's conclusions are not reliable for two reasons: (1) "there have been few, if any, scientific studies conducted on falls after having been pushed," which indicates a "lack of scientific consensus on how to assess such cases"; and (2) Dr. Chiu failed to account for many "unknown variables."  (Dkt. no. 81 at 4.)  Plaintiff responds that Defendants mischaracterize the viability of biomechanics in

this context and that any perceived shortcomings in Dr. Chiu's analysis go to the weight her testimony should be afforded rather than its admissibility.  (See dkt. no 94 at 4-8.)

Regarding the lack of a scientific consensus, Defendants have again sliced things too finely.  "Biomechanics is the science concerned with the action of forces, internal and external, on the living body."  Sola v. Home Depot U.S.A., Inc., No. 06-CV-6324 (ERK), 2008 WL 11436769, at *5 (E.D.N.Y. Dec. 23, 2008).  Even if Dr. Chiu did not rely on literature or studies that involve this exact factual scenario, that does not undermine the general utility of biomechanics analysis, which, here, includes review of peer-reviewed medical studies related to neck and spinal injuries, Dr. Chiu's own observations made at the scene, analysis of photographs and Mr. Lopez's medical records, and calculations based on Newtonian physics.  For that reason, biomechanics experts are regularly permitted to opine on injury causation in cases involve car crashes, falls, and other applications of force to the human body.[4]  Dr. Chiu's

---

[4] See, e.g., Manzone v. Wal-Mart Stores, Inc., No. 17 CV 277 (SIL), 2020 WL 5411483, at *5 (E.D.N.Y. Sept. 9, 2020) (allowing biomechanics expert "to testify about the nature of the slip and fall accident at issue in this case, the cause of the accident, and the types of injuries that could reasonably result"); Thomas, 2018 WL 919998, at *6 (admitting biomechanics expert's testimony in case involving car crash where expert undertook similar analysis as Dr. Chiu).

biomechanics analysis is rigorous enough to satisfy <u>Daubert</u>'s
gatekeeping function.

Defendants' contention regarding Dr. Chiu's failure to
account for unknown variable does not change that calculus.
Those gaps in Dr. Chiu's analysis are certainly important, but
they "affect the weight" to be afforded to Dr. Chiu's "testimony
rather than its admissibility." <u>Lakah v. UBS AG</u>, No. 07-CV-2799
(LAP), 2016 WL 10839568, at *2 (S.D.N.Y. Jan. 20, 2016) (Preska,
J.).  Defendants are free to explore the limitations of Dr.
Chiu's analysis, including Dr. Yamaguchi's powerful criticisms,
on cross-examination.  Although Dr. Chiu and Dr. Yamaguchi
obviously disagree about the usefulness of biomechanics analysis
as applied to the specific facts of this case, that is a
disagreement for the jury (not the Court) to sort out.

At base, "[a]s long as an expert's scientific testimony
rests upon good grounds, based on what is known, it should be
tested by the adversary process--competing expert testimony and
active cross-examination--rather than excluded from jurors'
scrutiny for fear that they will not grasp its complexities or
satisfactorily weigh its inadequacies." <u>Faulkner</u>, 46 F. Supp.
3d at 376 (quotation marks omitted).  Such is the case here.

### 3. <u>Relevance</u>

Down to their last strike, Defendants assert that "Dr.
Chiu's testimony is not relevant and will not assist the trier

of fact" because her "conclusions are based on imagined
scenarios to which no one testified."  (Dkt. no. 81 at 8.).
That contention proves too much.  When assessing the relevance
of expert testimony, courts "look to the standards of Rule 401."
Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d
Cir. 2002).  Under that standard Dr. Chiu's testimony is
patently relevant:  Her opinion that Mr. Lopez's injuries are
inconsistent with Officer Linares's version of events, if
credited, certainly tends to make it more probable that Mr.
Lopez's account is true.  See FED. R. EVID. 401(a).

Defendants offer two primary arguments in response, neither
of which advances the ball.  First, Defendants posit that Dr.
Chiu misconstrued Officer Linares's testimony in developing her
opinion.  (See dkt. no. 81 at 9.)  But even assuming Defendants
are correct, Dr. Chiu's mistake of fact would be fodder for
cross-examination, not exclusion.[5]  Second, Defendants contend
that Dr. Chiu's opinion about which factual scenario is most
likely invades on matters that are the province of the jury.
(See id. at 10.)  Not so.  Dr. Chiu's testimony does not tell
the jury what result to reach; she merely offers an opinion on

_____

[5] See, e.g., SR Int'l Bus. Ins. Co. v. World Trade Ctr.
Props., LLC, 467 F.3d 107, 134 (2d Cir. 2006) ("To the extent
that there are gaps or inconsistencies in [the expert's]
testimony, those issues go to the weight of the evidence, not to
its admissibility." (quotation marks omitted)).

an issue of fact as to which of two competing stories is more likely.  And opinion testimony is not rendered irrelevant merely because "it embraces an ultimate issue to be decided by the trier of fact."  SEC v. Badian, 822 F. Supp. 2d 352, 357 (S.D.N.Y. 2011).

### 4. Conclusion

For the reasons above, Defendants' First Motion in Limine [dkt. no. 81] is DENIED.  Dr. Chiu may offer her expert testimony.

### b. Second Motion in Limine

Defendants' Second Motion in Limine seeks primarily to preclude the introduction of certain evidence related to Mr. Lopez's injuries.  (See dkt. no. 82.)  Specifically, Defendants aver that certain photos and medical records, some of which Dr. Chiu relied on in crafting her expert report, should be excluded because introducing evidence of Mr. Lopez's injuries is irrelevant to liability and will only serve to prejudice the jury.  (See id. at 1-3.)  Moreover, Defendants suggest that Plaintiff Suhail Laureano has no relevant testimony to offer because she did not witness the events in question.  (See id. at 3-4.)  Plaintiff counters that (1) the evidence on which Dr. Chiu relied will provide necessary context to the jury, (2) Plaintiff's photos of Mr. Lopez's injuries are relevant to liability because they show he sustained them from the fall, and

(3) Plaintiff should be permitted to testify to provide necessary background information and, possibly, to authenticate certain photographic evidence.  (See dkt. no. 95 at 1-4.)

The Court finds that the photos of Mr. Lopez's injuries and the medical records should be excluded.  Although the evidence may be somewhat probative of the cause of Mr. Lopez's injuries, that probative value is substantially outweighed by the risk of prejudice and confusing the issues.  Injury is not an element of Plaintiff's claims for assault and battery,[6] and introducing evidence of Plaintiff's injuries, which are indisputably severe, runs a serious risk of the jury's viewing liability less critically.  Additionally, as stated above, Plaintiff will still be able to introduce Dr. Chiu's testimony on the causation issue.  Dr. Chiu may disclose to the jury that she relied on medical records and photographs of Mr. Lopez's injuries, even though those underlying photos and medical records will not be admitted.  See FED. R. EVID. 703.

---

[6] "Under New York law, a civil assault is the intentional placing of another in apprehension of imminent harmful or offensive contact.  The elements of a civil battery are (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent."  Doe v. Alsaud, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016) (quotation marks omitted).  Plaintiff's reliance on Vogelfang v. Riverhead County Jail, No. 04-CV-1727 (SJF) (AKT), 2012 WL 1450560 (E.D.N.Y. Apr. 19, 2012) is misplaced, because the Eighth Amendment claim at issue there involved force as an element.

As for Ms. Laureano, the Court finds that she may testify regarding the photographs of the scene that she took in order to authenticate those photos.  But the Court finds the remainder of her proposed testimony--which condenses to her "observation of and communications with Mr. Lopez on the day of the incident," (dkt. no. 95 at 4)--to be largely irrelevant and, in any event, substantially outweighed by the risk of confusing the issues.  See FED. R. EVID. 401, 403.  Ms. Laureano has no personal knowledge regarding the events in question, her testimony does not bear on any of the elements of her claims on trial in this matter, and her speaking about observing Mr. Lopez's injuries in the hospital risks confusing the issues for the jury in this bifurcated trial on liability.  Moreover, although background evidence may sometimes be admitted, that evidence must "somehow aid the court in determining the probative value of other evidence offered to affect the probability of the existence of a consequential fact."  2 WEINSTEIN'S FEDERAL EVIDENCE § 401.04 (2021).  The Court finds that Ms. Laureano's proposed testimony will not do so, principally because this case is essentially a battle of credibility between Mr. Lopez and Officer Linares.

For the reasons above, Defendants Second Motion in Limine [dkt. no. 82] is GRANTED in part and DENIED in part.  The medical records and photos of Mr. Lopez's injuries are

inadmissible in this trial on liability, but Ms. Laureano may testify subject to the limitations set forth above.

### c. **Third Motion in Limine**

Defendants' Third Motion in Limine seeks to preclude the introduction of photographic evidence of the scene of the incident, including photos taken by both Plaintiff as well as the NYPD's Internal Affairs Bureau ("IAB").  (See dkt. no. 83; see also dkt. no. 111 at 2 n.1 (clarifying that motion also pertains to IAB photos).)  Specifically, Defendants contend that the photographic evidence is not probative of the critical issue in the trial--i.e., whether Mr. Lopez jumped over the guardrail or was pushed--and introducing it would only mislead or confuse the jury.  (See dkt. no. 83 at 3-4.)  Defendants also suggest that the photos should be excluded on personal knowledge and hearsay grounds.  (See id. at 4.)

The Court disagrees.  The photographs will provide relevant, and indeed critical, visual context to the jurors, who will be tasked primarily with assessing the credibility of Mr. Lopez's and Officer Linares's testimony.  All the photographs at issues were taken within a few months of Mr. Lopez's fall, and any possible changes to the scene depicted in the photographs can be spoken to by witnesses, such as Officer Linares, who were on the scene.  Any risk of the photographs confusing the jury is minimal, and Defendants will suffer no prejudice from their

admission.  To the contrary, the jury would arguably be more confused if the photographs were excluded because they would be left simply to imagine what the scene looked like.

Defendants' personal knowledge argument is similarly unavailing.  Defendants posit that the photographs cannot be offered because Plaintiff does not have personal knowledge of the events in question, including the exact location where Mr. Lopez went over the guardrail.  (See id. at 4.)  Defendants misapprehend the relevant legal standard.  Plaintiff plainly has personal knowledge of "the scene . . . photographed," even if that scene may not depict the exact spot where Mr. Lopez fell. 2 MCCORMICK ON EVIDENCE § 215 (8th ed. 2020).  To admit the photos, they need only be relevant--which they are--and a witness need only be able to authenticate them.  As Defendants concede, Plaintiff can authenticate the photos she took.  (See dkt. no. 111 at 1.)  And, as Plaintiff points out, Officer Linares can authenticate the IAB photographs because he has already testified that at least one IAB photo accurately depicts the scene.[7]  It is perfectly permissible that other witnesses with personal knowledge of the scene can tie in the photographs.

---

[7] (See dkt. no. 96 at 1 n.1.)  "The standard for admissibility of photographs requires the witness to recognize and identify the object depicted and testify that the photograph is a fair representation of what it purports to portray." Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 214 (2d Cir. 2009).

Finally, Defendants' hearsay contention, "while imaginative, is without merit." Hart v. BHH, LLC, No. 15-CV-4804, 2019 WL 1494027, at *3 (S.D.N.Y. Apr. 4, 2019).  The photographs are not hearsay because they are not "statements," i.e., "oral assertion[s], written assertion[s], or nonverbal conduct . . . intended . . . as an assertion." FED. R. EVID. 801(a), (c).  The rules against hearsay, therefore, have nothing to say about the matter.  See, e.g., United States v. Moskowitz, 581 F.2d 14, 21 (2d Cir. 1978) (holding that a sketch was not a "statement" and "therefore can no more be 'hearsay' than a photograph identified by a witness").

Accordingly, Defendants' Third Motion in Limine [dkt. no. 83] is DENIED.  Plaintiff may introduce photographic evidence of the scene at trial.

### d. **Fourth Motion in Limine**

Defendants' Fourth Motion in Limine seeks to preclude the introduction of any footage from Mr. Lopez's videotaped deposition.  (See dkt. no. 84.)  Defendants aver that introducing the footage would result in severe prejudice because, when confronted with the extent of Mr. Lopez's injuries, "it would be exceedingly difficult, if not impossible, for jurors to remain objective toward defendants when considering questions of fault and causation."  (Id. at 1-2.) Plaintiff counters with two points: (1) videotaped deposition

testimony is favored because it is most like live testimony, which is especially important in this case given the central role Mr. Lopez's credibility will play; and (2) Defendants "completely ignore[ ] the videotape's tremendous evidentiary value and greatly overstate[ ] its potential prejudice."  (Dkt. no. 97 at 1.)

The Court finds that the videotaped deposition testimony, as cropped, is admissible.  Defendants do not question that videotaped deposition footage is most like in-person testimony. Nor could they.  The video footage will allow the jury to assess Mr. Lopez's demeanor and facial expressions, a luxury unavailable if the testimony is introduced through an audio-only recording or, worse yet, through "readings from cold, printed records."  Paisley Park Enters., Inc. v. Uptown Prods., 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999).  The Federal Rules of Civil Procedure recognize that uncontroversial principle.[8]  Indeed, "[t]he liberalization of the Federal Rules . . . to more fully permit videotape recording of depositions reflects a belief that the use of such technology enhances parties' presentation at

---

[8] Specifically, the Federal Rules provide that "[o]n any party's request, deposition testimony offered in a jury trial for any purpose other than impeachment must be presented in nontranscript form, if available, unless the court for good cause orders otherwise."  FED. R. CIV. P. 32(c) (emphasis added).

trial, particularly before juries." <u>Convolve, Inc. v. Compaq</u>
<u>Computer Corp.</u>, 223 F.R.D. 162, 182 (S.D.N.Y. 2004).

Defendants' repeated invocations of prejudice are
ineffectual, principally because they greatly overstate the
"graphic" nature of the videos.  In the footage, Mr. Lopez is
lying on his back with a blanket pulled up to his neck.  No
injuries, blood, or hospital equipment is displayed.  Moreover,
as the parties have since confirmed, the video footage of Mr.
Lopez's deposition can be cropped to focus more closely on Mr.
Lopez's face.[9]  That cropped footage eliminates the overwhelming
majority of any prejudice that Defendants might suffer.
Although the jurors could theoretically infer that Mr. Lopez is
delivering his testimony from a hospital bed, the possibility
that the jurors draw that inference does not substantially
outweigh the probative value of the video footage of Mr. Lopez's
deposition.

Finally, as will be set out more thoroughly below,
Defendants will be able to introduce plentiful evidence to
impeach Mr. Lopez or otherwise challenge the credibility of his
testimony.  Given the central role that Mr. Lopez's testimony
and the jury's assessment of his credibility will play in this

---

[9] The Court requested that the parties submit a cropped
sample for its <u>in camera</u> review.  Plaintiff did so on March 8,
2021.  The Court finds the cropping used in that video to be
sufficient to minimize any unfair prejudice to Defendants.

trial, the Court concludes that the jury should receive the full picture.  To exclude the video footage would afford Defendants an unfair advantage.

For each of these reasons, Defendants Fourth Motion <u>in Limine</u> [dkt. no. 84] is <u>DENIED</u>.  Plaintiff may offer the videotaped deposition footage at trial--cropped to focus on Mr. Lopez's face--subject to the other limitations on Mr. Lopez's testimony as expressed herein.

### e. **Fifth Motion in Limine**

Defendants' Fifth Motion <u>in Limine</u> seeks to preclude Plaintiff from mentioning IAB's investigation into the incident and prevent Plaintiff from calling NYPD Lieutenant Steven Alfano and NYPD Executive Officer James Ryan as witnesses, both of whom were involved in the IAB investigation.  (<u>See</u> dkt. no. 85 at 1.) Plaintiff does not oppose Defendants' motion to prevent introducing evidence from the IAB investigation but "does, however, intend to call Officer James Ryan as an impeachment witness."  (Dkt. no. 98 at 1.)

Because Plaintiff has agreed not to introduce evidence related to NYPD's internal investigation, that portion of Defendants' motion is moot.  As for Officer Ryan's potential testimony, Defendants' motion is premature.  As both parties acknowledge, Sergeant Carlos Rosario, who is Defendant Linares's supervisor, will be a witness at trial, and Sergeant Rosario

made certain statements to Officer Ryan as part of an IAB
interview.  (See dkt. no. 98 at 1; dkt. no. 113 at 1-2.)  The
Court will not preemptively exclude Officer Ryan without the
benefit of hearing Sergeant Rosario's testimony at trial.
Accordingly, Defendants Fifth Motion in Limine [dkt. no. 85] is
DENIED without prejudice to renewal at trial.

### f. Sixth Motion in Limine

Defendants' Sixth Motion in Limine seeks to preclude the
testimony of the following witnesses who Defendants claim do not
have personal knowledge of the events: (1) EMS Officer Ludwig
Loy; (2) EMT Technician Dennis Wong; (3) NYPD Officer Shaniqua
Clark; and (4) NYPD Officer John Moise.  (See dkt. no. 86 at 1.)
Plaintiff opposes the motion only as to EMT Wong's testimony,
which Plaintiff intends to introduce for three reasons: (1) EMT
Wong did not find drugs on Mr. Lopez when he arrived on the
scene, (2) EMT Wong saw no indication that Mr. Lopez had been
using drugs, and (3) EMT Wong conducted a head-to-toe
examination of Mr. Lopez in the ambulance and did not find any
drugs on his person.  (See dkt. no. 99 at 1.)

Because Plaintiff has agreed not to call EMS Loy, Officer
Clark, or Officer Moise, that portion of Defendants' motion is
moot.  As for EMT Wong's testimony, Defendants' contention
misses the mark.  Defendants have indicated that they plan to
offer evidence that Mr. Lopez was using and possessing drugs at

the time of the incident underlying this case.  (See, e.g., dkt. no. 88 at 7.)  EMT Wong's testimony certainly satisfies the low relevance standard regarding whether Mr. Lopez used or possessed drugs.  In their reply, Defendants repeatedly suggest that it was not among EMT Wong's responsibilities to search Mr. Lopez for drugs.  (See dkt. no. 114 at 2-3.)  That may well be true, but that goes to the weight EMT Wong's testimony should be given, not its admissibility.  Any possibility that EMT Wong's testimony may mislead the jury can be limited by Defendants through cross examination.  For these reasons, Defendants Sixth Motion in Limine [dkt. no. 86] is DENIED.

### g. Seventh Motion in Limine

Because Plaintiff has agreed not to question Officer Linares about his disciplinary history, (see dkt. no. 100 at 1), Defendants' Seventh Motion in Limine seeking to preclude such testimony [dkt. no. 87] is DENIED as moot.

### h. Eighth Motion in Limine

Defendants' Eighth Motion in Limine seeks to introduce myriad evidence of Mr. Lopez's criminal history.  (See dkt. no. 88.)  Defendants seek to admit three general categories of criminal-history evidence: (1) four felony convictions, (2) several non-felony convictions and arrests, and (3) certain information regarding Mr. Lopez's parole.  The Court considers each in turn.

### 1. **Felony Convictions**

Defendants first assert that all four of Mr. Lopez's felony convictions--for Burglary in the First Degree, Burglary in the Third Degree, Robbery in the Third Degree, and Attempted Robbery in the Third Degree--are admissible under Rule 609 because they are highly relevant for impeachment purposes.  (See id. at 2-6.) Plaintiff counters that the prejudicial effect of admitting those felony convictions substantially outweighs the minimal probative value that those convictions have regarding Mr. Lopez's character for truthfulness.  (See dkt. no. 101 at 1-6.)

Because none of Mr. Lopez's convictions involves "a dishonest act of false statement,"[10] Rule 609(a)(1) offers the only pathway to admission.  That provision allows for the admission of a conviction "for a crime that . . . was punishable by death or by imprisonment for more than one year."  FED. R. EVID. 609(a)(1).  All of Mr. Lopez's felony convictions fit that definition.[11]  Moreover, as both parties acknowledge, Mr. Lopez

---

[10] FED. R. EVID. 609(a)(2).  Convictions for robbery and burglary, though "involv[ing] 'dishonesty' as that term might be understood by non-lawyers," do not fit this definition.  Ramsay-Nobles v. Keyser, No. 16 Civ. 5778 (CM), 2020 WL 359901, at *2 (S.D.N.Y. Jan. 22, 2020).

[11] See N.Y. PEN. LAW § 70.00(2) (listing punishments for all classes of felonies, all of which exceed one year's imprisonment); see also id. § 140.30 ("Burglary in the first degree is a class B felony."); id. § 140.20 ("Burglary in the third degree is a class D felony."); id. § 160.05 ("Robbery in

(continued on following page)

was released from custody less than ten years ago.  (See dkt.
no. 88 at 2-3; dkt. no. 101 at 3.)  Therefore, Mr. Lopez's
felony convictions are admissible so long as they satisfy Rule
403.  See FED. R. EVID. 609(a)(1), (b).

   "When balancing the probative value of a conviction against
its prejudicial effect, courts will examine four factors: (1)
the impeachment value of the prior crime, (2) the remoteness of
the prior conviction, (3) the similarity between the past crime
and the conduct at issue, and (4) the importance of the
credibility of the witness."  Olutosin, 2019 WL 5616889, at *9
(quotation marks omitted).  Here, those factors decidedly favor
admitting the convictions.

   Despite Plaintiff's arguments to the contrary, convictions
for burglary and robbery are "quite probative of veracity"
because "theft crimes, and other crimes involving stealth, . . .
bear on a witness's propensity to testify truthfully."[12]  And,
most importantly, the critical importance of Mr. Lopez's
credibility weighs strongly in favor of admitting the

---

(continued from previous page)
the second degree is a class C felony."); id. § 110.05(6) ("An
attempt to commit a crime is a . . . [c]lass E felony when the
crime attempted is a class D felony.").

   [12] United States v. Estrada, 430 F.3d 606, 618, 621 (2d Cir.
2005); see also Ramsay-Nobles, 2020 WL 359901, at *4 (observing
that burglary and robbery "are the kinds of crimes that. . . are
generally allowed to be used as impeachment under the Rule
609(a)(1)").

convictions.  This case is essentially a battle between Mr. Lopez's and Officer Linares's "radically divergent accounts of what transpired," and Mr. Lopez's credibility "will be of decisive importance for a jury that is tasked with discerning who is telling the truth."  Id. at *10 (quotation marks omitted).  The convictions are not so old, and the underlying conduct is not so similar as to outweigh these first two factors.

Consequently, evidence of Mr. Lopez's felony four felony convictions is admissible under Rule 609(a)(1).  The Court will limit that evidence, however, to "the statutory name of the offense, the date of conviction, and the sentence imposed." Estrada, 430 F.3d at 617.  Defendants do not have a free license to probe all the facts underlying the convictions.

## 2. Non-Felony Convictions

Next, Defendants assert that Mr. Lopez's non-felony convictions and arrests are admissible because "his extensive experience with law enforcement" is "probative of his absence of mistake" regarding the identify of the officers who approached and later chased him, "his knowledge and familiarity with" police "apprehension tactics and procedure," and "his intent to avoid apprehension." (Dkt. no. 88 at 7.)  Plaintiff counters that such evidence is irrelevant to those purposes and that

introducing the evidence would be highly prejudicial and confusing to the jury.  (See dkt. no. 101 at 6-9.)

Recall that prior bad acts evidence is admissible if it is (1) offered for a proper Rule 404(b) purpose, (2) relevant, and (3) not unfairly prejudicial.  See Frazier, 2019 WL 761912, at *5.  Here, the evidence is offered for a proper purpose:  Rule 404(b) enumerates "intent," "knowledge," and "absence of mistake."  FED. R. EVID. 404(b)(2).  The evidence's admissibility thus turns on the relevance versus unfair prejudice balancing.  Although this is a close question, the Court finds that such balancing counsels in favor of admitting the evidence of Mr. Lopez's extensive non-felony criminal history, subject to certain limitations.

The Court received, in camera, a list of Mr. Lopez's non-felony convictions and arrests (with dates and charges).  Two of Mr. Lopez's prior misdemeanor convictions involved arrests by plain-clothes officers.  Here, Officer Linares was dressed in plain clothes when he approached Mr. Lopez.  Past interactions with plain-clothes officers--who dress in that fashion specifically to avoid identifying themselves immediately as the police--certainly are relevant to "absence of mistake," i.e., whether Mr. Lopez was aware that he was being pursued by police officers.  And the Court finds that Mr. Lopez's other extensive experience with law enforcement is relevant to his knowledge of

police procedures and his intent to evade apprehension, which bears on whether Mr. Lopez may have jumped over the guardrail to avoid arrest.

The Court recognizes that the admission of this evidence could prejudice Plaintiff, but that prejudice does not substantially outweigh the evidence's probative value.  Indeed, the risk of unfair prejudice can be ameliorated in large part by limiting the information that Defendants can share with the jury.  To limit the risk of unfair prejudice, Defendants may only inform the jury that Mr. Lopez had been arrested eleven times for non-felony offenses--including twice by plain-clothes officers--resulting in nine non-felony convictions.  Defendants may not introduce evidence regarding the nature of those offenses, the names of the crimes, the number of charges for each arrest, or other information of a similar variety.  That will ensure that the jury can consider the non-felony arrest and conviction evidence for its proper Rule 404(b) purposes while limiting the possibility that the jury will draw an impermissible inference that Mr. Lopez is a bad person or has a propensity for criminal behavior.

In short, the Court concludes that Defendants may offer evidence of Mr. Lopez's non-felony arrests and convictions, subject to the limitations set forth above.

### 3. **Parole Violations**

Finally, Defendants assert that certain information regarding Mr. Lopez's parole status--namely, that he was on parole, that he was in violation of his parole, that a warrant had been issued for his arrest, and that he possessed drugs at the time he was approached by the defendant officers--is admissible evidence of motive and intent to flee.  (See dkt. no. 88 at 8-9.)  "Plaintiff does not oppose the admission of those facts," but she does wish to exclude evidence relating Mr. Lopez's parole to his felony convictions.  (Dkt. no. 101 at 9.) Because the Court finds these facts to be relevant to Mr. Lopez's motive to flee, the evidence regarding Mr. Lopez's parole is admissible under Rule 404(b).  However, to limit any possible prejudice, Defendants may not introduce evidence regarding why Mr. Lopez was on parole or other extrinsic evidence, such as Mr. Lopez's parole records or similar testimony from his parole officer.

### 4. **Conclusion**

For the reasons and to the extent described above, Defendants' Eighth Motion in Limine [dkt. no. 88] is GRANTED. Mr. Lopez's four felony convictions are admissible under Rule 609(a) to attack his character for truthfulness.  Defendants may also introduce evidence regarding Mr. Lopez's non-felony convictions or arrests, subject to the limitations outlined

29

above.  Finally, Defendants may offer evidence regarding Mr.
Lopez's parole status and violations, the outstanding warrant
for his arrest, and the fact that he possessed drugs when the
officers approached him.  The parties shall propose limiting
instructions regarding the permissible purposes for which the
jurors may consider each type of evidence.  See Huddleston v.
United States, 485 U.S. 681, 691 (1988).

> ### i. Ninth Motion in Limine

Defendants' Ninth Motion in Limine seeks to introduce
evidence that Mr. Lopez lied at his deposition.  (See dkt. no.
89.)  Defendants assert that Mr. Lopez denied ever having
committed a crime of violence, (see id. at 2), and Defendants
propose to introduce extrinsic evidence that Mr. Lopez's
statements were false, (see id. at 3-5; dkt. no. 116 at 1-3.)
Specifically, Defendants propose to offer NYPD Arrest and
Complaint Reports detailing the circumstances underlying Mr.
Lopez's previous arrests as well as his plea allocution related
to his felony convictions.  (See id. at 1-2 & n.2.)
Alternatively, Defendants propose to admit certain information
about each of Mr. Lopez's felony convictions through a statement
that the Court would read to the jury.  (See dkt. no. 121 at 1-
2.)

Defendants do not, however, identify which Federal Rule of
Evidence permits the introduction of this evidence.  That is

telling.  Because Defendants hope to introduce this evidence to attack Mr. Lopez's character for truthfulness, Rules 608 and 609 are the most likely candidates.  But neither Rule allows this evidence to come in.

Rule 609(a) does authorize the use of extrinsic evidence of a prior felony conviction to impeach a witness's credibility. See Fed. R. Evid. 609(a).  But that Rule does not sanction the introduction of evidence regarding all the <u>facts underlying</u> those convictions.  To the contrary, the Advisory Committee's Notes suggest that the value of conviction evidence for impeachment purposes is limited solely to the fact that a crime was committed, not the specific facts underlying that crime.[13]

Rule 608(b) does not permit introduction of the evidence either.  Although the Rule allows inquiry, "on cross-examination," into "specific instances of a witness's conduct," it expressly forbids the introduction of "extrinsic evidence" like the Arrest and Complaint Reports, plea allocution, and information about Mr. Lopez's convictions.  Fed. R. Evid. 608(b). The common-law "impeachment by contradiction" rule is also of no help.  That rule only applies where the witness puts a fact in issue on his direct, and the Court of Appeals has been

---

[13] See Fed. R. Evid. 609 advisory committee's notes on proposed rules ("As a means of impeachment, evidence of conviction of crime is significant only because it stands as proof of the commission of the underlying criminal act.").

especially wary to extend the rule beyond that context.  <u>See</u>
<u>Ramirez</u>, 609 F.3d at 499-500.  Here, Defendants' counsel
elicited the information from Mr. Lopez at a deposition--
Plaintiff did not open the door.

In short, Defendants cite no rule under which the extrinsic
evidence they seek to introduce is admissible to impeach Mr.
Lopez's testimony.  Defendants could have questioned Mr. Lopez
about these matters at his deposition, but they did not do so.
That failure does not provide Defendants an avenue to end-run
around the Federal Rules of Evidence.  Accordingly, Defendants
Ninth Motion <u>in Limine</u> [dkt. no. 89] is <u>DENIED</u>.

### j. <u>Tenth Motion in Limine</u>

Defendants' Tenth Motion <u>in Limine</u> seeks to preclude any
mention of the City of New York as a defendant.  (<u>See</u> dkt. no.
90.)  Although this is not technically an evidentiary question,
the Court observes that Rule 403's balancing inquiry is
nevertheless useful.  <u>See</u> <u>Collado v. City of New York</u>, No. 11
Civ. 9041 (S.D.N.Y. July 20, 2018), ECF. No. 108 at 3.

Applying those principles, the Court finds that any
probative value in mentioning the City is wholly outweighed by
the possibility of unfair prejudice.  "[E]ven though the City
has been involved in this litigation, that fact is irrelevant to
the determination of liability . . . , which should be based
solely on the facts and the law."  <u>Nunez v. Diedrick</u>, No. 14-CV-

4182 (RJS), 2017 WL 4350572, at *3 (S.D.N.Y. June 12, 2017)
(quotation marks omitted).  The City's status as a <u>respondeat</u>
<u>superior</u> defendant has almost no probative value because the
jury will make no findings against the City.  Yet, on the flip
side, Defendants risk suffering unfair prejudice because any
perceived involvement by the City (or its attorneys) "could
cause the jury to view liability less critically" by
"suggest[ing] the presence of a deep pocket."  <u>Estate of Jaquez</u>
<u>v. Flores</u>, No. 10 Civ. 2881 (KBF), 2016 WL 1060841, at *2
(S.D.N.Y. Mar. 17, 2016).

　　　　Accordingly, Defendants' Tenth Motion <u>in Limine</u> [dkt. no.
90] is <u>GRANTED</u>.  Plaintiff shall (1) make no mention of the City
of New York <u>as a defendant</u> in front of the jury, (2) refer to
opposing counsel as "defense counsel," and (3) remove the City
as a defendant from the caption for any documents used at trial.
The Court observes that passing references to the City are
likely to happen, particularly during Plaintiff's cross-
examination of Officer Linares and Sergeant Rosario, who of
course are employed by the City.  Such references are to be
expected; the point is to avoid going overboard.  <u>See</u> <u>Guzman v.</u>
<u>Jay</u>, 303 F.R.D. 186, 193 n.2 (S.D.N.Y. 2014).

## III. <u>Conclusion</u>

　　　　Because the Court's rulings on these motions <u>in limine</u> are
necessarily made without the benefit of a developed trial

record, they are subject to revision at trial if necessary.  See Davis v. City of New York, 296 F.R.D. 127, 130 (E.D.N.Y. 2013) (Weinstein, J.).  A final pre-trial conference is scheduled for September 1, 2021 at 9:00 a.m., and trial in this matter will begin on September 15, 2021 at 9:00 a.m.  The parties shall submit requests to charge and proposed voir dire questions one week in advance of the confirmed trial date.  The parties shall exchange requests to charge sufficiently in advance of the submission date to submit a single proposed draft of the substantive portions of the charge, noting any disagreements they might have.  The Clerk of the Court shall close the open motion.  (See dkt. no. 79.)

**SO ORDERED.**

Dated:     July 30, 2021
           New York, New York

_Loretta A. Preska_____
LORETTA A. PRESKA
Senior United States District Judge